IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARGARET ANNE WICKLAND,
as Trustee for and on Behalf of
an Irrevocable Trust Established
December 23, 1974, and Revocable
Trust Established August 23, 1985;
and GUY CORPORATION,

        Plaintiffs,

v.                      //   CIVIL ACTION NO. 1:17CV205
                                   (Judge Keeley)

AMERICAN MOUNTAINEER ENERGY, INC.;
and MURRAY ENERGY CORPORATION,

        Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]

For the reasons stated on the record during the scheduling conference, and for the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss for failure to state a claim (Dkt. No. 19).

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2017, the plaintiffs, Margaret Anne Wickland, as Trustee for and on Behalf of an Irrevocable Trust Established December 23, 1974, and Revocable Trust Established August 23, 1985, and Guy Corporation filed this action against American Mountaineer Energy, Inc. ("AMEI"), and Murray Energy Corporation ("Murray") (Dkt. No. 1). The facts are taken from the complaint and construed in the light most favorable to the plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]

The plaintiffs are the sole owners of two grants of right, title, and interest in and to the mineable and merchantable Pittsburgh vein or seam of coal underlying two parcels of land in Harrison County, West Virginia ("the Premises"). The plaintiffs or their predecessors in interest originally leased the Premises in 1958 and 1962. On September 12, 2008, however, AMEI became the lessee of the Premises pursuant to the assignment of a Consolidated, Amended and Restated Lease ("Lease") (Dkt. Nos. 17-1; 17-2). That same day, Murray agreed to guarantee AMEI's performance under the Lease (Dkt. No. 17 at 6).

The Lease had a primary term of 20 years, and the parties agreed that part of the consideration was the lessee's "commitment to promptly commence and actively pursue coal mining operations on the Leased Premises in order to maximize the benefits of the current coal market conditions" (Dkt. No. 17-1 at 21). To that end, the Lease imposed the following schedule on AMEI:

- September 14, 2010:      Apply for necessary permits

- September 14, 2013:      Receive all permits

- September 14, 2016:      Commence substantial construction

- December 31, 2019:      Operate longwall mining system

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

Id. at 22. In 2013, the primary term of the Lease was extended to
23 years, and these deadlines extended respectively to 2010, 2016,
2019, and 2022 (Dkt. No. 17-3 at 3).

The Lease also contemplated annual "advance recoupable
production royalties" in the amount of $1,000,000 or $2,000,000
beginning in 2008. These royalties were not intended to be
penalties against AMEI, but rather were "compensation to Lessors
for the delay in receiving Production Royalties . . . which were
reasonably anticipated to have been paid if Lessee had timely
performed such conditions and obligations." Id. at 27-29. AMEI
would have been able to recoup the advance payments once it
actually began production and owed production royalties. If the
Lease terminated for any reason, however, the advance royalty
payments would "be forfeited and retained by Lessors, if not
recouped by Lessee as provided." Id.

In the event that the Lease terminated, AMEI agreed "to
cooperate in the timely transfer and/or assignment of any and all
permits, licenses, etc. required for mining or operation to Lessors
or to its designated assignee upon Lessor's request therefore, to
the extent the same are assignable or transferrable." Id. at 31. It
also agreed to "promptly deliver to Lessors (or its designee) all
surveys, maps, reports, drilling logs, core samples, coal analyses,

and every other piece of information, document or instrument." Id. at 32-33. If AMEI failed to pay a royalty, the plaintiffs had the right to terminate the Lease after providing AMEI with written notice and a ten-day cure period. Id. at 39-40. Upon termination, the plaintiffs had the right to re-enter the Premises, but AMEI would remain liable for "the payment of royalties due at the time of termination or re-entry." Id. at 41.

Finally, as relevant to the complaint, the parties "understood and irrevocably agreed that Lessee shall not have the right and shall not sell, transfer, mortgage, pledge, collateralize, pass, assign, sublease or encumber (collectively 'Transfer') this Lease or any interest in the Leased Premises, in whole or in part, directly or indirectly, without the express prior written consent of Lessors which may be withheld for any reason, with or without cause, and Lessee hereby specifically and irrevocably waives and relinquishes all rights to make any Transfer without such written consent." Id. at 44-45. The plaintiffs had the right to terminate the Lease if this provision was violated. Id. at 45.

In 2013 and 2015 respectively, Murray acquired Consolidated Coal Company for $3.5 billion and other coal reserves from Foresight Reserves, LP for $1.37 billion. It stated by press release that the purchase would position "these companies for

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

growth and for continued safe, low-cost coal production, utilizing the longwall mining method" (Dkt. No. 17 at 3). On August 31, 2016, Murray and AMEI advised the plaintiffs that, in order to "conserve cash," AMEI would not make the next scheduled advance royalty payment or comply with other obligations under the Lease. Id.

When AMEI did not pay the scheduled advance royalty on September 14, 2016, the plaintiffs provided a notice of default. When neither AMEI nor Murray cured the default, the plaintiffs terminated the Lease on October 4, 2016. Id. at 10. On October 17, 2016, AMEI acknowledged receipt of the default and termination letters, but declined to cooperate in the transfer of mining permits. Id. Thereafter, the plaintiffs discovered that AMEI and Murray had been pledging, mortgaging, collateralizing, and encumbering the Lease without their consent. Id. at 11.

In their complaint filed on December 1, 2017, the plaintiffs make three claims for relief. In Count One, the plaintiffs allege that AMEI breached the Lease by failing to make a scheduled $2,000,000 advance royalty payment on September 14, 2016; failing to mine the mineable and merchantable coal during the term of the Lease; pledging, encumbering, collateralizing, and/or otherwise transferring rights in the Lease without the plaintiffs' consent; failing to cooperate in the transfer and assignment of permits,

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

licenses, other documents, and surface rights; and failing to
provide surveys, maps, reports, drilling logs, and other documents.
<u>Id.</u> at 13-18. As a result of these alleged breaches, the plaintiffs
seek $4 million in advance royalty payments (the 2016 and 2017
payments), as well as $267,820,000 in lost production royalties and
permitting expenses, with a present value of $110,980,000. <u>Id.</u> at
17-18. They also seek a declaration that previous advance royalty
payments are forfeited. <u>Id.</u> at 18. In Count Two, the plaintiffs
seek specific performance from AMEI and Murray, including the
transfer of permits, licenses, pending permit applications, and
necessary surface rights. <u>Id.</u> at 19-20. In Count Three, due to
Murray's role as guarantor, the plaintiffs seek to hold it liable
for AMEI's alleged breaches. <u>Id.</u> at 21.

The defendants answered the complaint on January 8, 2018 (Dkt.
Nos. 9; 10). Pending is their motion to dismiss portions of the
complaint, which the Court took up at a scheduling conference held
on April 4, 2018 (Dkt. Nos. 19; 23).

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for
dismissal on the grounds that a complaint does not "state a claim
upon which relief can be granted." When reviewing a complaint, the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

Court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).

A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "[A] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

In deciding on a motion, the Court need not confine its inquiry to the complaint; it may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

### III. APPLICABLE LAW

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits." <u>Volvo Const. Equip. N. Am. v. CLM Equip. Co., Inc.</u>, 386 F.3d 581, 599-600 (4th Cir. 2004) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 79 (1938)). Here, the Court must apply West Virginia law. <u>See Beckley Mech., Inc. v. Erie Ins. & Cas. Co.</u>, 374 F. App'x 381, 383 n.1 (4th Cir. 2010) (unpublished decision) (citing <u>Erie</u>, 304 U.S. 64).

> Under West Virginia law, a <u>prima facie</u> breach of contract claim requires the plaintiff to allege four elements: (1) that there is a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result.

<u>KBS Preowned Vehicles, LLC v. Reviva, Inc.</u>, No. 1:13cv138, 2014 WL 12591890, at *2 (N.D.W.Va. Mar. 26, 2014) (citing <u>Dan Ryan</u>

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

Builders, Inc. v. Crystal Ridge Dev., Inc., No. 1:09CV161, 2013 WL
5352844, at *11 (N.D.W.Va. Sept. 24, 2013)).

"A valid written instrument which expresses the intent of the
parties in plain and unambiguous language is not subject to
judicial construction or interpretation but will be applied and
enforced according to such intent." Syl. Pt. 2, Toppings v. Rainbow
Homes, Inc., 490 S.E.2d 817 (W. Va. 1997) (quoting Syl. Pt. 1,
Cotiga Dev. Co. v. United Fuel Gas Co., 128 S.E.2d 626 (W. Va.
1962)). "Uncertainties in an intricate and involved contract should
be resolved against the party who prepared it." Syl. Pt. 8, Estate
of Tawney v. Columbia Nat. Res., LLC, 633 S.E.2d 22 (W. Va. 2006)
(quoting Syl. Pt. 1, Charlton v. Chevrolet Motor Co., 174 S.E. 570
(W. Va. 1934)).

"The mere fact that parties do not agree to the construction
of a contract does not render it ambiguous. The question as to
whether a contract is ambiguous is a question of law to be
determined by the court." Syl. Pt. 2, CONSOL Energy, Inc. v.
Hummel, 792 S.E.2d 613 (W. Va. 2016) (quoting Syl. Pt. 1, Berkeley
Cty. Pub. Serv. Dist. v. Vitro Corp. of Am., 162 S.E.2d 189 (W. Va.
1968)). Ambiguous language is that "reasonably susceptible of two
different meanings or language of such doubtful meaning that
reasonable minds might be uncertain or disagree as to its meaning."

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

Syl. Pt. 5, <u>Jochum v. Waste Mgmt. of W. Va., Inc.</u>, 680 S.E.2d 59

(W. Va. 2009) (quoting <u>Estate of Tawney</u>, 633 S.E.2d 22, Syl. Pt.

4).

## IV. DISCUSSION

In their motion to dismiss, AMEI and Murray identify and seek

dismissal of "six specific claims" contained within the plaintiffs'

allegations: 2017 Advance Royalty Claim; Failure to Mine Claim;

Lost Production Royalties Claim; Surface Rights Transfer Claim;

Permit Applications Transfer Claim; and Good Faith and Fair Dealing

Claim. As an initial matter, the plaintiffs argue that the motion

is procedurally improper because the defendants are attacking

requests for relief or seeking to "prune" claims, rather than

moving to dismiss any of the three counts.

*First*, with regard to requests for relief, the plaintiffs

argue convincingly that the correct measure of damages is

inappropriate for analysis on a Rule 12(b)(6) motion.

> "A plain reading of Rule 12(b)(6) indicates that the rule
> may be used only to dismiss a 'claim' in its entirety."
> "[A] demand for relief is not part of a plaintiff's
> statement of the claim." As such, the nature of the
> relief included in the demand for judgment is immaterial
> to the question of whether a complaint adequately states
> a claim upon which relief can be granted. "A court
> therefore should not dismiss a complaint so long as it
> sets out facts sufficient to support a reasonable
> inference that the plaintiff is entitled to any relief

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

> the court can grant, even if that relief is not
> specifically requested." "Any doubt on this score is
> dispelled by Rule 54(c), which provides that a prevailing
> party may obtain any relief to which he's entitled even
> if he has not demanded such relief in his pleadings."
> "Thus, the selection of an improper remedy in the ...
> demand for relief will not be fatal to a party's pleading
> if the statement of the claim indicates the pleader may
> be entitled to relief of some other type."

<u>Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.</u>, 21 F.

Supp. 3d 620, 629 (W.D. Va. 2014) (internal citations omitted).

*Second*, arguing that distinct allegations within each count

cannot be attacked separately by the defendants, the plaintiffs

cite <u>In re Processed Egg Products Antitrust Litigation</u>, MDL No.

2002, 2011 WL 4945864 (E.D. Pa. Oct. 17, 2011). In that case, the

plaintiffs alleged anti-trust violations against egg and egg-

product producers. Employing a motion to dismiss, the defendants

attempted to narrow the scope of and "establish parameters around

the Plaintiffs' claim so as to provide some sort of guidance during

the pretrial stage." <u>Id.</u> at *4. The district court denied the

motion, in part because the defendants had employed an improper

vehicle "to circumscribe and delineate pretrial issues" regarding

the scope of alleged anti-trust violations. <u>Id.</u> at *5. "[T]he task

of limiting the issues or 'pruning off the surplusage' should be

accomplished by pre-trial proceedings and not by motions addressed

to the complaint." <u>Id.</u> (citation omitted).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

Unlike the defendants in <u>Processed Egg Products</u>, the defendants here are not "merely attack[ing] a non-existent claim" in an attempt to circumscribe and narrow the issues for trial, but rather have identified specific breach of contract allegations that they contend do not state a claim for relief. That the plaintiffs chose to include numerous allegations of breach of contract under one count does not insulate separate and independent claims for relief from review under Rule 12(b)(6). <u>Cf.</u> <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993) (analyzing several state-law claims for relief contained within one count). Although the defendants attack several requests for relief that are inappropriate for consideration at this stage of the litigation, the majority of the defendants' arguments relate to claims that are appropriate for analysis under Rule 12(b)(6).

**A.    Count One - Breach of Contract**

**1.    2017 Advance Royalty Claim**

The defendants argue that the plaintiffs fail to state a claim for breach of contract regarding failure to pay the advance royalty payment scheduled for September 14, 2017, nearly a year after the Lease terminated (Dkt. No. 20 at 5). According to the defendants,

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

the plain language of the Lease does not obligate them to make royalty payments following termination of the Lease. Id. at 5-6.

This argument is misplaced. In their complaint, the plaintiffs do not allege that AMEI breached the Lease by failing to make the payment scheduled for September 14, 2017, but rather that this payment was not made as a result of the defendants' breaches (Dkt. No. 17 at 14). Indeed, in response to the motion to dismiss, the plaintiffs concede that the September 2017 payment is a measure of damages that they allegedly incurred (Dkt. No. 21 at 10-11). Given that the nature of relief "is immaterial to the question of whether the complaint adequately states a claim upon which relief can be granted," Charles, 21 F. Supp. 3d at 629, the Court **DENIES** the defendants' motion to dismiss in this regard.

### 2.   **Failure to Mine/Lost Production Royalties Claims**

The plaintiffs allege, in part, that AMEI "materially breached the Lease by failing to mine the mineable and merchantable coal during the term of the Lease as required by the Lease" (Dkt. No. 17 at 15). And, as a portion of their damages for "AMEI's material breaches," the plaintiffs seek $262,670,000 in lost production royalties. Id. at 17-18. Although the parties have a tendency to

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

conflate these allegations, the defendants' arguments regarding
each claim are best addressed separately.

*First*, the Lease clearly does not support a standalone claim,
the so-called Failure to Mine Claim, that AMEI is in breach for
failing to mine all coal from the Premises. In the Lease, the
parties acknowledged that AMEI had a "commitment to develop"
because part of the consideration for the Lease was that AMEI would
"promptly commence and actively pursue coal mining operations"
(Dkt. No. 17-1 at 21). To that end, the Lease imposed a schedule
regarding permitting and active mining, which was eventually
amended to require the operation of a longwall mining system by
December 31, 2022 (Dkt. No. 17-3 at 3).

The Lease also required AMEI to follow "Best Mining Practice
of a prudent coal mining operator, so that there will be no
needless or avoidable loss or waste of coal" (Dkt. No. 17-1 at 19).
If mineable coal was not mined, AMEI nonetheless had to pay the
plaintiffs a production royalty on it. Id. The plaintiffs argue
that, because the Lease imposed an obligation on AMEI to pay a
royalty for mineable coal that it left unmined, the termination of

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

the Lease obligates it to pay a production royalty for all the coal left unmined on the Premises (Dkt. No. 21 at 18-20).[1]

In the context of the entire Lease, it is clear that the parties did not contemplate such an obligation. For instance, the obligation to mine all mineable coal or pay a production royalty remained subject to "all other provisions of this Lease" (Dkt. No. 17-1 at 19). One of those provisions was that AMEI did not have to commence operation of a longwall mining system until December 31, 2022, more than six years after the plaintiffs elected to terminate the Lease for non-payment of the 2016 advance royalty. It follows that, when the Lease terminated, so did AMEI's obligation to mine coal and to pay a production royalty for unmined coal.

Moreover, the Lease expressly provides that the plaintiffs retain advance production royalties in the event that the Lease terminates, but contains no such provision for the payment of royalties on unmined coal. Id. at 27-29. If breach or termination of the Lease rendered the defendants liable for a royalty on all the Premises coal, the provision forfeiting advance royalties to the plaintiffs would be rendered meaningless. Therefore, because

---

[1] The plaintiffs neither allege nor contend that AMEI's refusal to pay the 2016 advance royalty constituted an anticipatory breach of the entire contract. See Syl. Pt. 2, Yoak v. Marshall Univ. Bd. of Governors, 672 S.E.2d 191 (W. Va. 2008).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

the Lease is not reasonably susceptible to the interpretation posited by the plaintiffs, the Court **GRANTS** the defendants' motion to dismiss the Failure to Mine Claim.

*Second*, the plaintiffs' Lost Production Royalties Claim is a statement of the damages flowing from AMEI's alleged breaches, not a freestanding claim (Dkt. No. 17 at 17-18). Much like the defendants' argument regarding the 2017 Advance Royalty, the contention that this calculation "fails to state a claim" is an inappropriate attack on the plaintiffs' request for relief. See Charles, 21 F. Supp. 3d at 629.[2] The Court thus **DENIES** the defendants' motion to dismiss the Lost Production Royalties Claim, subject to renewal of their argument at a later date.

### 3.    Good Faith and Fair Dealing Claim

The defendants also contend that any claim for breach of the covenant of good faith and fair dealing should be dismissed because the plaintiffs do not assert that AMEI exercised a discretionary

---

[2] Indeed, the defendants rely solely on cases decided at summary judgment or after trial to argue that the relief sought by the plaintiffs is improper. See, e.g., Mike Ross, Inc. v. Dante Coal Co., 230 F. Supp. 2d 716 (N.D.W.Va. 2002) (Keeley, C.J.); Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc., No. 2:09-cv-01278, 2011 WL 3022239 (S.D.W.Va. July 22, 2011); Edwin Miller Invs., LLC v. CGP Dev. Co., Inc., 752 S.E.2d 901 (W. Va. 2013); Desco Corp. v. Harry W. Trushel Const. Co., 413 S.E.2d 85 (W. Va. 1991).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

action in bad faith (Dkt. No. 20 at 12-13). The plaintiffs argue that whether AMEI intentionally breached the Lease in bad faith by failing to pay the 2016 advance royalty is a factual question suited for further development (Dkt. No. 21 at 21-22).

"West Virginia law 'implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract.'" Evans v. United Bank, Inc., 775 S.E.2d 500, 509 (W. Va. 2015) (quoting Stand Energy Corp. v. Columbia Gas Transmission, 373 F. Supp. 2d 631, 644 (S.D.W.Va. 2005)). But "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." Barn-Chestnut, Inc. v. CFM Dev. Corp., 457 S.E.2d 502, 509 (W. Va. 1995) (quoting Bonanza Int'l, Inc. v. Rest. Mgmt. Consultants, Inc., 625 F. Supp. 1431, 1448 (E.D. La. 1986)). The covenant applies "[w]hen a contract confers discretion on one of the parties that affects the rights of the other." Branch Banking & Trust Co. v. Sayer Brothers, Inc., No. 2:14cv19880, 2015 WL 6456570, at *20 (S.D.W.Va. Oct. 26, 2015) (quoting Staats v. Bank of Am., N.A., No. 3:10cv68, 2010 WL 10899255, at *10 (N.D.W.Va. Nov. 4, 2010)).

The covenant does not give rise to a separate and independent cause of action, but rather sounds in breach of contract. Evans,

775 S.E.2d at 509 (citing <u>Gaddy Engineering Co. v. Bowles Rice</u> <u>McDavid Graff & Love, LLP</u>, 746 S.E.2d 568, 578 (W. Va. 2013)). A claim based on the implied covenant may be construed as a breach of contract claim to the extent it covers matters not identical to other breach of contract claims. <u>JJK Mineral Co., LLC v. Noble</u> <u>Energy, Inc.</u>, No. 5:16cv112, 2017 WL 2662196, at *2 (N.D.W.Va. June 20, 2017); <u>see also</u> <u>LaPosta Oldsmobile, Inc. v. General Motors</u> <u>Corp.</u>, 426 F. Supp. 2d 346, 355-56 (N.D.W.Va. 2006) (dismissing claim that restated allegations in breach of contract claim).

Here, the plaintiffs allege that "AMEI has breached the Lease and its implied covenant of good faith and fair dealing by violating" various express provisions of the Lease related to payment of advance royalties (Dkt. No. 17 at 13-18). Despite the plaintiffs' reference to the implied covenant, they have not alleged that AMEI violated an additional duty not expressly delineated in the contract. Because the implied covenant of good faith and fair dealing cannot support rights contrary to those set out in the Lease, the plaintiffs' reliance on the implied covenant is merely duplicative. <u>See</u> <u>JJK Mineral Co.</u>, No. 5:16cv112, 2017 WL 2662196, at *2. Therefore, the Court **GRANTS** the defendants' motion

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

to dismiss Count One to the extent it is based on the implied
covenant of good faith and fair dealing.

### B.   Count Two - Specific Performance

The Lease contains the following provision:

> If for any reason this Lease is terminated or cancelled,
> Lessee agrees to cooperate in the timely transfer and/or
> assignment of any and all permits, licenses, etc.
> required for mining or operation to Lessors or to its
> designated assignee upon Lessors' request therefore, to
> the extent the same are assignable or transferrable.

(Dkt. No. 17-1 at 31). In Count Two, the plaintiffs allege that
various permits have been issued to AMEI, and that several permit
applications remain pending. They further allege that, "because
AMEI chose to develop a mine plan for the mining permits that may
require the permit holder to owner certain surface rights," it must
transfer those surface rights in order to comply with its
obligation to transfer permits and permit applications under the
Lease (Dkt. No. 17 at 19-20).[3] They seek to compel the defendants'
specific performance by requiring them to "transfer sufficient
surface rights in duration and scope to allow for the mining of all

---

[3] This is apparently based on West Virginia's requirement that
certain permit applications include "[a] description of the legal
documents upon which the applicant's legal right to enter and
conduct surface-mining operations on the proposed permit area is
based and whether that right is the subject of pending court
litigation." W. Va. Code § 22-3-9(a)(9).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

mineable coal and the transfer of existing permits, licenses, and applications to Plaintiffs or their designee." Id. at 20.

"Although pled as a separate count, the relief sought in Count [Two] . . . is not an independent cause of action, but merely a possible remedy should [the plaintiffs] ultimately establish . . . a breach by [the defendants]." Windstar Holdings LLC v. Range Res. Corp., No. 1:10CV204, 2011 WL 2709849, at *3 (N.D.W.Va. July 12, 2011). While the plaintiffs argue that their requests for specific performance are demands for relief not subject to attack under Rule 12(b)(6) (Dkt. No. 21 at 11-12), the defendants contend that no claim has been stated that would support the specific performance requested. Neither of the defendants' contentions regarding the Permit Applications Transfer Claim and the Surface Rights Transfer Claim are persuasive.

### 1.    Permit Applications Transfer Claim

The defendants contend that the Lease does not require them to transfer permit applications, as opposed to active permits (Dkt. No. 20 at 10). The Lease language, however, at best is ambiguous in this regard. The parties certainly contemplated the transfer of documents "required for mining or operation"; the inclusion of "etc." following "permits, licenses" is thus reasonably susceptible

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

to an interpretation that would include pending permit applications if such are required for mining or operation of the Premises. <u>See Jochum</u>, 680 S.E.2d 59, Syl. Pt. 5. "[T]he construction of 'ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.'" <u>Manning v. Mercatanti</u>, 898 F. Supp. 2d 850, 862 (D. Md. 2012) (quoting <u>Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.</u>, 991 F.2d 94, 97 (4th Cir. 1992)). Therefore, the Court **DENIES** the defendants' motion to dismiss that part of Count Two seeking to compel the transfer of pending permit applications.

### 2.  Surface Rights Transfer Claim

The defendants also contend that the Lease does not impose an obligation to transfer surface rights, and that no statute or regulation requires the plaintiffs to acquire AMEI's surface rights to receive transfer of permits or applications (Dkt. No. 20 at 10-12). The plaintiffs contend that "the parameters and scope of the cooperation obligations" under the Lease are inappropriate for analysis under Rule 12(b)(6) (Dkt. No. 21 at 21).

Inasmuch as the plaintiffs do not contest that the Lease and applicable law impose no express requirement that AMEI transfer surface rights, the question presented is whether the Lease is

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 19]**

reasonably susceptible to such an interpretation. That the Lease requires the defendants to "cooperate" in the transfer of permits may reasonably be read to require them to facilitate access to the surface as contemplated by the permits and permit applications to be transferred. Whether this construction is correct is an improper question at this early stage of the parties' litigation. <u>Manning</u>, 898 F. Supp. 2d at 862. Therefore, the Court **DENIES** the defendants' motion to dismiss this aspect of Count Two.

### V. CONCLUSION

For the reasons discussed, the Court **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss (Dkt. No. 19).

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: June 18, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE