IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARGARET ANNE WICKLAND, et al.,

     Plaintiffs,

    v.              Case No. 1:17-cv-205
                      (Judge Kleeh)

AMERICAN MOUNTAINEER ENERGY,
INC. et al.,

     Defendants.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 142] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 144]

This matter is before the Court on the parties' cross-motions for summary judgment, filed on November 30, 2018 [Dkt. Nos. 142 and 144]. The parties filed response and reply briefs on December 21, 2018 and January 11, 2018, respectively [Dkt. Nos. 157; 158; 159; and 160], and the issues are ripe for consideration.[1] For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** the motion for summary judgment filed by Plaintiffs [Doc. No. 142]. The Court **DENIES** the motion for summary judgment filed by Defendants [Doc. No. 144].

---

[1] On April 5, 2019, the Court held a pre-trial conference with the parties [Dkt. No. 191] and advised that a written memorandum opinion would be forthcoming which would deny Defendants' motion for summary judgment and reserve some liability issues and the question of damages for the April 15, 2019, bench trial [Dkt. No. 193 at 8-9].

Wickland, et al. v.
American Mountaineer Energy,
Inc., et al.                                    Civil Case No. 1:17cv205

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2017, the Plaintiffs, Margaret Anne Wickland, as Trustee for and on Behalf of an Irrevocable Trust Established December 23, 1974, and Revocable Trust Established August 23, 1985, and Guy Corporation (collectively "Plaintiffs"), filed this diversity action against American Mountaineer Energy, Inc. ("AMEI") and Murray Energy Corporation ("Murray") [Dkt. No. 1]. The Plaintiffs filed an unredacted complaint on February 20, 2018 [Dkt. No. 17] after the entry of a protective order on February 14, 2018 [Dkt. No. 16].

The Plaintiffs are the sole owners of two grants of right, title, and interest in and to the mineable and merchantable Pittsburgh vein or seam of coal underlying two parcels of land in Harrison County, West Virginia (the "Leased Premises") [Dkt. Nos. 17; 143-1]. The Plaintiffs or their predecessors in interest originally leased the Premises in 1958 and 1962. On September 12, 2008, however, AMEI became the lessee of the Premises pursuant to the assignment of a Consolidated, Amended and Restated Lease ("Lease") [Dkt. No. 143-1]. That same day, Murray agreed to guarantee AMEI's performance under the Lease [Dkt. No. 143-6 at 5].

The Lease had a primary term of 20 years, and the parties agreed that part of the consideration was the lessee's

2

Wickland, et al. v.
American Mountaineer Energy,
Inc., et al.                        Civil Case No. 1:17cv205

"commitment to promptly commence and actively pursue coal mining operations on the Leased Premises in order to maximize the benefits of the current coal market conditions" [Dkt. No. 143-1 at 21]. The Lease imposed the following schedule on AMEI:

- September 14, 2010:      Apply for necessary permits

- September 14, 2013:      Receive all permits

- September 14, 2016:      Commence substantial construction

- December 31, 2019:       Operate longwall mining system

[Id. at 22]. In 2013, the primary term of the Lease was extended by agreement to 23 years, and AMEI's deadlines were extended respectively to 2010, 2016, 2019, and 2022 [Dkt. No. 143-7 at 3-4]. The purpose of the Lease was for lessee to "install, at the earliest possible time, and thereafter operate at least one (1) complete, modern and efficient longwall mining system (including all related equipment and facilities) in the Leased Premises" [Dkt. No. 143-1 at 19]. As extended, the lessee was to "have installed and be diligently operating a complete, modern, efficient and adequate longwall mining system" on or before December 31, 2022 [Dkt. No. 143-7 at 3].

The Lease also contemplated annual "advance recoupable production royalties" ("advance payments," "advance royalty payments" or "minimum royalties") in the amount of $1,000,000 or $2,000,000 beginning in 2008 [Dkt. No. 143-1 at 27]. These

3

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

minimum royalties were not intended to be penalties against AMEI, but rather were "compensation to Lessors for the delay in receiving Production Royalties . . . which were reasonably anticipated to have been paid if Lessee had timely performed such conditions and obligation" [Id. at 27-29; Dkt. No. 143-8 at 6]. AMEI would have been able to recoup the advance payments once it began production and owed production royalties [Id.] If the Lease terminated for any reason, however, the advance royalty payments would "be forfeited and retained by Lessors, if not recouped by Lessee as provided in this Lease" [Id.]. The provision for advance payments was restated in the 2013 Amendment to Consolidated, Amended and Restated Lease [Dkt. No. 143-7 at 4], and required AMEI to pay advance royalty payments to lessor of $2,000,000 in years one, two, seven, and eight of the Lease, as well as in years nine through the remaining term, from 2016 through 2031 [Id. at 3; 4]. Advance payments of $1,000,000 were owed to lessor in years three, four, five, and six [Id. at 4].

As to the advance payments, the Lease provided that "[t]he 'Amount Due' in each such year shall be adjusted based on any increase (but not any decrease) in the consumer price index (or other comparable index) using December 2008 as the 'base'" [Dkt. No. 143-1 at 28]. The Lease further required lessee to credit

4

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

any advance payment "from such Production Royalties paid to Lessee, any time, against the Production Royalty due in such year" [Id.]. No advance payment "shall be due when Production Royalties actually paid in a year equal or exceed the Advance Recoupable Production Royalty payment due for such year" [Id.]. Moreover, if the Lease terminated for any reason, and the lessee "has not recovered all of the outstanding Advance Recoupable Production Royalties paid by Lessee hereunder against Production Royalty, . . . said unrecovered Advance Recoupable Production Royalties shall be irrevocably forfeited by Lessee" [Id.].

If the Lease terminated or cancelled, AMEI agreed "to cooperate in the timely transfer and/or assignment of any and all permits, licenses, etc. required for mining or operation to Lessors or to its designated assignee upon Lessor's request therefore, to the extent the same are assignable or transferrable" [Dkt. No. 143-1 at 31]. If the lease terminated for any reason other than the exhaustion of coal, AMEI agreed to

> promptly deliver to Lessors (or its designee) all surveys, maps, reports, drilling logs, core samples, coal analyses, and every other piece of information, document or instrument, regardless of the form it is in, related in any way to this Lease and/or Lessee's activities and operations hereunder and/or in or on the Leased Property.

[Id. at 32-33]. If AMEI failed to pay a royalty, the plaintiffs had the right to terminate the Lease after providing AMEI with

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                    **Civil Case No. 1:17cv205**

___

written notice and a ten-day cure period [Id. at 39-40]. Upon termination, AMEI would remain liable for "the payment of royalties due at the time of termination or re-entry" [Id. at 41.].

With respect to lessor remedies, the Lease states that the "remedies set forth under this Lease shall be cumulative and shall not be exclusive of other rights or remedies available to Lessors under West Virginia statutory law or common law" [Dkt. No. 143-1 at 41]. In the event of termination, lessors "may re-enter and take possession of the Leased Premises without limitation of legal process," and thereafter "re-let the same, or any part thereof, upon such terms and conditions as Lessors may deem proper" [Id.]. According to the Lease, neither "re-entry nor re-letting shall discharge the Lessee from the payment of royalties due at the time of termination or re-entry, or from any unsatisfied obligation of the Lessee under the Lease" [Id.]. Also, no termination or re-entry by lessors "shall bar the recovery of accrued royalties or damage for the breach of any of the terms, conditions or covenants on the part" of the lessee [Id.].

Pursuant to the Lease, the parties

> understood and irrevocably agreed that Lessee shall not have the right and shall not sell, transfer, mortgage, pledge, collateralize, pass, assign,

**Wickland, et al. v.
American Mountaineer Energy,
Inc., et al.**                    **Civil Case No. 1:17cv205**

> sublease or encumber (collectively 'Transfer') this
> Lease or any interest in the Leased Premises, in whole
> or in part, directly or indirectly, without the
> express prior written consent of Lessors which may be
> withheld for any reason, with or without cause, and
> Lessee hereby specifically and irrevocably waives and
> relinquishes all rights to make any Transfer without
> such written consent.

[Dkt. No. 143-1 at 44-45]. The Plaintiffs had the right to terminate the Lease if this provision was violated [Id. at 45].

In 2013 and 2015 respectively, Murray acquired Consolidated Coal Company for $3.5 billion and other coal reserves from Foresight Reserves, LP for $1.37 billion [Dkt. Nos. 17 at 3; 143-8 at 21-26]. Murray stated by press release that the purchase would position "these companies for growth and for continued safe, low-cost coal production, utilizing the longwall mining method" [Dkt. No. 17 at 3]. By letter on August 31, 2016, Murray and AMEI notified Plaintiffs that, in order to "conserve cash," AMEI would not make the next scheduled advance royalty payment or comply with other obligations under the Lease [Dkt. Nos. 143-11 at 2-3; 143-13]. The "conserve cash" reference was explained as follows by a Murray corporate representative:

> We have, just based on our credit agreements, very
> substantial payments due on our first lien debt at the
> end of each quarter, and we have very significant
> payments due on a semi-annual basis on April 15th and
> October 15th of each calendar year. So given the
> timing of this (the September 14, 2016 royalty

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                    **Civil Case No. 1:17cv205**

> payment), the conservation of cash would have been in
> an effort to have sufficient liquidity in order to
> make those required debt service payments.

[Dkt. No. 143-8 at 10-11]. The representative acknowledged that Murray's concern about its "liquidity position" did not excuse AMEI's failure to pay Plaintiffs a minimum royalty under the Lease [Id. at 19-20]. Murray and AMEI offered to "put the project 'on hold' for five (5) years" and to pay Plaintiffs $50,000 annually in advance royalty payments rather than the $2,000,000 due under the Lease [Dkt. No. 143-13]. Defendants also advised the Plaintiffs that "there will be no increase to any amount payable in the future years to offset this reduced annual advance lease payment for the five (5) year period" [Id.].

AMEI did not pay the scheduled advance royalty on September 14, 2016 when it was due [Dkt. No. 143-8 at 8]. Upon nonpayment, the Plaintiffs provided AMEI and Murray with a notice of default [Dkt. Nos. 143-4 at 4; 143-11 at 3; 143-14]. When neither AMEI nor Murray cured the default, the Plaintiffs terminated the Lease on October 4, 2016 [Dkt. No. 143-11 at 3]. On October 17, 2016, AMEI acknowledged receipt of the default and termination letters, but declined to cooperate in the transfer of mining permits [Dkt. No. 143-17]. At that time, AMEI stated that a transfer of the mining permits would not be

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

possible because Plaintiffs do not hold the necessary property rights to the leasehold estate [Id.]. AMEI also notified Plaintiffs that the WV/NPDES permits would not be transferred [Id.]. Thereafter, the Plaintiffs learned that AMEI and Murray had been encumbering the leasehold interest under the Lease without the consent of Plaintiffs in connection with Murray financing transactions that took place in 2013, 2014, 2015, and 2016 [Dkt. Nos. 143-4 at 5; 143-5 at 7-8].

AMEI and Murray acknowledge that the failure to pay Plaintiffs the advance recoupable production royalty on September 14, 2016, and the recording of encumbrances without Plaintiffs' consent breached the terms of the Lease[2] [Dkt. Nos. 143-4 at 6; 143-5 at 8; 145 at 2; 8; 17]. AMEI and Murray further acknowledge that, despite "reasonable cooperation" and application efforts, AMEI did not obtain a Section 401 Water Quality Certification ("Section 401 Certification") or Section 404 Clean Water Act Permit ("Section 404 Permit") by September

---

[2] AMEI and Murray filed an Offer of Judgment on August 3, 2018 for the 2016 advance royalty payment together with interest, or $2,460,000.00 [Dkt. No. 57]. The offer was based on "Plaintiffs' claim against AMEI for breach of the September 12, 2008 Consolidated, Amended and Restated Lease between Plaintiffs and AMEI, as amended, (the "Lease") by failing to pay the Advance Recoupable Production Royalty that was due on September 14, 2016" [Id. at 1]. The offer was not accepted. AMEI and Murray also concede "that some security interests that were prohibited by Section 7.6 and not permitted by Section 11 of the Assignment were inadvertently recorded against the" leasehold [Dkt. No. 145 at 17]. One of the improper liens was recorded by Defendants *after the termination* of the Lease [Dkt. Nos. 143 at 5; 143-3 at 130; 143-10]. As the improperly recorded liens are now released, Defendants believe this ground for Plaintiffs' breach of contract claim is moot.

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                              **Civil Case No. 1:17cv205**

14, 2016 as required by the Lease [Dkt. Nos. 145 at 19; 30-32; 143-9 at 15-16].

In their complaint, the Plaintiffs alleged three claims for relief.  In Count One, the Plaintiffs claim that AMEI breached the Lease as follows:  by failing to make a scheduled $2,000,000 advance royalty payment on September 14, 2016; failing to mine the mineable and merchantable coal during the term of the Lease; pledging, encumbering, collateralizing, and/or otherwise transferring rights in the Lease without the Plaintiffs' consent; failing to obtain a Section 401 Certification and Section 404 Permit by September 14, 2016; failing to cooperate in the transfer and assignment of permits, licenses, other documents, and surface rights; and failing to provide surveys, maps, reports, drilling logs, and other documents [Dkt. No. 1 at 13-18].  Because of these breaches, Plaintiffs seek advance or minimum royalty payments, lost production royalties and permitting expenses, and a declaration that the previous advance royalty payments are forfeited [Id. at 17-18].  In Count Two, the Plaintiffs seek specific performance from AMEI and Murray, including the transfer of permits, licenses, pending permit applications, and necessary surface rights [Id. at 19-20].  In Count Three, due to Murray's role as guarantor under the Lease,

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                          **Civil Case No. 1:17cv205**

the Plaintiffs seek to hold it liable for AMEI's alleged breaches [Id. at 21].

The Defendants answered the complaint on January 8, 2018 [Dkt. Nos. 9; 10]. The Defendants filed a motion to dismiss portions of the complaint, which was considered by the Court at the April 4, 2018 scheduling conference [Dkt. Nos. 19; 23]. The Court issued a *Memorandum Opinion and Order Granting in Part and Denying Part Defendants' Motion to Dismiss* [Dkt. No. 19] on June 18, 2018. *See*, Wickland, et al. v. Am. Mountaineer Energy, Inc., et al., No. 1:17CV205, 2018 WL 3029273 (N.D.W. Va. June 18, 2018) (the "Order"). Of Plaintiffs' claims, the Court's Order dismissed two: breach of contract based on failing to mine the mineable and merchantable coal during the lease term; and breach of contract based on the implied covenant of good faith and fair dealing. Defendants' motion to dismiss was denied as to the remaining claims. The parties filed cross-motions for summary judgment on November 30, 2018 [Dkt. Nos. 142 and 144], and the matter is scheduled for a bench trial on April 15, 2019.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also

11

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

_Hunt v. Cromartie_, 526 U.S. 541, 549 (1999); _Celotex Corp. v._
_Catrett_, 477 U.S. 317, 322-23 (1986); _Hoschar v. Appalachian_
_Power Co._, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact"
is a fact that could affect the outcome of the case. _Anderson_
_v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986); _News &_
_Observer Publ'g Co. v. Raleigh-Durham Airport Auth._, 597 F.3d
570, 576 (4th Cir. 2010). A "genuine issue" concerning a
material fact exists when the evidence is sufficient to allow a
reasonable jury to return a verdict in the nonmoving party's
favor. _FDIC v. Cashion_, 720 F.3d 169, 180 (4th Cir. 2013); _News_
_& Observer_, 597 F.3d at 576.

Thus, a summary judgment motion should be granted if the
nonmovant fails to make a showing sufficient to establish the
existence of an essential element of his claim or defense upon
which he bears the burden of proof. _Celotex_, 477 U.S. at 323.
That is, once the movant shows an absence of evidence on one
such element, the nonmovant must then come forward with evidence
demonstrating there is indeed a genuine issue for trial. _Id._ at
323-324. The existence of a mere scintilla of evidence
supporting the nonmovant's position is insufficient to create a
genuine issue; rather, there must be evidence on which a jury
could reasonably find for the nonmovant. _Anderson_, 477 U.S.
252. When determining whether summary judgment is appropriate,

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

a court must view all factual evidence and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. Hoschar, 739 F.3d at 169.

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," Anderson, 477 U.S. at 249, nor will it make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. Anderson, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-323.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the

**Wickland, et al. v.
American Mountaineer Energy,
Inc., et al.**                    **Civil Case No. 1:17cv205**

nonmoving party as to each motion.  Id. at 523; see also
Monumental Paving & Excavating, Inc. v. Pa. Manufacturers' Ass'n
Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999).

### III. <u>APPLICABLE LAW</u>

Summary judgment in this case turns on one issue:  the
proper construction of the Lease between the parties.  "A
federal court exercising diversity jurisdiction is obliged to
apply the substantive law of the state in which it sits." Volvo
Const. Equip. N. Am. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-
600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S.
64, 79 (1938)).  Here, the Court must apply West Virginia law.
Beckley Mech., Inc. v. Erie Ins. & Cas. Co., 374 F. App'x 381,
383 n. 1 (4th Cir. 2010) (unpublished decision) (citing Erie,
304 U.S. 64).

> Under West Virginia law, a <u>prima facie</u> breach of
> contract claim requires the plaintiff to allege four
> elements:  (1) that there is a valid, enforceable
> contract; (2) that the plaintiff has performed under
> the contract; (3) that the defendant has breached or
> violated its duties or obligations under the contract;
> and (4) that the plaintiff has been injured as a
> result.

KBS Preowned Vehicles, LLC v. Reviva, Inc., No. 1:13CV138, 2014
WL 12591890, at *2 (N.D.W. Va. Mar. 26, 2014) (citing Dan Ryan
Builders, Inc. v. Crystal Ridge Dev., Inc., No. 1:09CV161, 2013
WL 5352844, at *11 (N.D.W. Va. Sept. 24, 2013)).

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 2, Toppings v. Rainbow Homes, Inc., 490 S.E.2d 817 (W. Va. 1997) (quoting Syl. Pt. 1, Cotiga Dev. Co. v. United Fuel Gas Co., 128 S.E.2d 626 (W. Va. 1962)). "Uncertainties in an intricate and involved contract should be resolved against the party who prepared it." Syl. Pt. 8, Estate of Tawney v. Columbia Nat. Res., LLC, 633 S.E.2d 22 (W. Va. 2006) (quoting Syl. Pt. 1, Charlton v. Chevrolet Motor Co., 174 S.E. 570 (W. Va. 1934)).

"The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 2, CONSOL Energy, Inc. v. Hummel, 792 S.E.2d 613 (W. Va. 2016) (quoting Syl. Pt. 1, Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp. of Am., 162 S.E.2d 189 (W. Va. 1968)). Ambiguous language is that "reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syl. Pt. 5, Jochum v. Waste Mgmt. of W. Va., Inc., 680 S.E.2d 59 (W. Va. 2009) (quoting Syl. Pt. 4, Tawney, 633 S.E.2d 22).

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

_____

To determine the intent of the parties to a contract, a court must examine the contract "in its entirety." Columbia Gas Trans. Corp. v. E.I. du Pont de Nemours & Co., 217 S.E.2d 919, 925 (W. Va. 1975). The contract must be construed to "render all its provisions consistent and harmonious." Edwin Miller Investments, L.L.C. v. CGP Dev. Co., Inc., 752 S.E.2d 901, 906-907 (W. Va. 2013).

## IV. DISCUSSION

Plaintiffs request summary judgment on all counts of the complaint [Dkt. Nos. 142; 143]. Plaintiffs insist that AMEI and Murray breached the Lease by failing to pay the advance recoupable production royalty since September 14, 2016; wrongfully encumbering and collateralizing the leasehold interest; failing to obtain a Section 401 Certification and Section 404 Permit by September 14, 2016; failing to cooperate in the transfer and assignment of permits, licenses, other documents, and surface rights; and failing to provide surveys, maps, reports, drilling logs, and other documents as required after termination of the Lease [Dkt. Nos. 17; 143]. Plaintiffs contend that the breaches of the Lease left them without the benefit of their bargain and unable to re-lease the premises [Id.].

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

_____

While AMEI and Murray concede that AMEI did not pay Plaintiffs the advance royalty payment on September 14, 2016, or thereafter, and that they "inadvertently" encumbered the Leased Premises without providing notice to Plaintiffs and without consent,[3] in violation of the Lease, Defendants disagree that the breaches resulted in injury to Plaintiffs beyond a single minimum royalty payment for 2016. AMEI and Murray also agree that AMEI did not obtain a Section 401 Certification or Section 404 Permit by September 14, 2016 as expressly required by the Lease, but argue that they took every reasonable step to do so, stopping their efforts once Plaintiffs notified them of default. Defendants contest the claim that they have failed to cooperate in the transfer and assignment of permits, licenses, other documents, and surface rights because the Plaintiffs do not own the surface rights necessary to mine the leasehold interest.

_____

[3] Defendants admit that "some security interests prohibited by Section 7.6 and Section 11 of the Assignment were inadvertently recorded against the" leasehold [Dkt. No. 145 at 17; Exh. 10 at 129-131], but that they have "now been released, and those releases have been properly recorded" [Id. at 17; Exh. 1 at 222]. Defendants seem to believe that the wrongful encumbrances cannot be deemed a contract breach if they were "inadvertent" and are released. Whether the recording of wrongful encumbrances or liens was intentional or inadvertent makes no difference under the language of Lease. _Any_ pledge, collateralization, or encumbrance without the express prior written consent of the Plaintiffs violates the Lease. Moreover, the failure of Plaintiffs to declare default on this ground does not absolve Defendants of liability or waive Plaintiffs' claim [Dkt. No. 143-1 at 40-41]. The Court also notes that Defendants' inadvertence in publicly recording improper liens against the Lease Premises occurred thirteen (13) separate times over a multi-year time frame, including once in 2017 after the Lease was terminated, and after Defendants' August 31, 2016 letter advising Plaintiffs that the project lacks value for the foreseeable future [Dkt. Nos. 143-3 at 130; 143-4 at 5-6].

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

Defendants argue that the Plaintiffs have no ownership interest in the surface rights above the Leased Premises, and that the Lease requires no cooperation by way of the transfer or assignment of those surface rights which are necessary for the transfer of the mining permits.

## A. Breach of Contract

The proper starting point for resolving this dispute is the text of the Lease. The Lease requires that AMEI, as lessee, pay Plaintiffs, as lessors, an "annual advance recoupable production royalty" [Dkt. No. 143-1 at 27]. These advance or minimum payments were not intended as a penalty against AMEI, but as "compensation to Lessors for the delay in receiving" expected production royalties if lessee timely performed the conditions of the Lease [Id. at 27-29]. AMEI was to recoup the advance payments once it began production and owed production royalties [Id.]. The Lease provided for advance payments to Plaintiffs for the life of the Lease, from September 14, 2008 to September 14, 2031 [Id.; Dkt. No. 143-7 at 3-4]. The exception to this is that no advance royalty payment "shall be due when Production Royalties actually paid in a year equal or exceed the Advance Recoupable Royalty payment due for such year" [Id.]. The parties' intention as to the required payment of annual advance recoupable production royalties is unambiguous.

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                      **Civil Case No. 1:17cv205**

Plaintiffs argue that the remedy for the failure to pay the advance royalty payment is to put the Plaintiffs in the same position as if the Lease had been performed [Dkt. Nos. 143 at 13-14; 159 at 2].  Defendants counter by arguing that such an interpretation of the Lease would serve as an improper penalty to AMEI and Murray, and that compensatory damages in breach of contract actions are to be more strictly confined than those in cases of tort[4] [Dkt. No. 145 at 15-16].  Similar arguments have been lodged against breach of contract claims that relate to royalty provisions that also include acceleration clauses.  See Lampert v. Tams Mgmt., Inc., et al., No. 5:15CV6746, 2016 WL 9110168 (S.D.W. Va. Mar. 11, 2016).

Here, the parties negotiated a straightforward advance recoupable production royalty provision as part of a coal production lease, and AMEI knowingly failed to honor the provision.  Murray agreed to guarantee AMEI's adherence to and performance of all terms and conditions of the Lease, including

---

[4] The text of the Lease seems to contradict Defendants' position that a so-called broad interpretation of the annual advance recoupable production royalty provision would unnecessarily penalize AMEI and Murray.  The language shows that the parties intended for the advance payments to be "recoupable" and recovered by lessee upon the payment of production royalties to Plaintiffs [Dkt. No. 143-1 at 27-29].  It further states that if the Lease terminates for any reason and advance payments have not been recovered by lessee against production royalties, the advance payments are irrevocably forfeited by lessee [Id. at 28].  Defendants' argument that the parties did not intend for advance royalty payments to extend beyond any single year in which no production occurred or be retained by Plaintiffs after termination of the Lease may not be consistent with the parties' agreement.

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                    **Civil Case No. 1:17cv205**

the language governing advance royalty payments. The Court **FINDS** that the language is unambiguous, and that AMEI breached the Lease as to the minimum royalty payment which was reasonably anticipated to have been paid if the lessee had performed its obligations. Any other interpretation of the Lease would transform the document into a one-sided agreement that could be unilaterally terminated by AMEI and Murray at any time without concern for provisions governing advance royalty payments and production royalties, permitting, construction, and production deadlines, and lessors' ownership of the Leased Premises, and corresponding rights and remedies. Such a reading would deny Plaintiffs the benefit of their bargain when the parties, each a commercial entity, agreed to this relationship.

Another point conceded by AMEI and Murray is that the companies wrongfully encumbered and collateralized the leasehold interest, in violation of Section 7.6 of the Lease and Section 11 of the Assignment [Dkt. Nos. 145 at 17; 145-10 at 129-130]. However, Defendants maintain that the encumbrances were unintentional, and released without causing harm to Plaintiffs. One of the improper liens was filed in February 2017, four months after the Lease was terminated [Dkt. Nos. 157 at 18; 157-8 at 18 and Exh. B; 157-6 at 130]. Plaintiffs presented Defendants with a Memorandum of Lease Termination by letter

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

dated November 3, 2017, and requested that the memorandum be executed to record in Harrison County, and that all improperly recorded liens and encumbrances be released [Dkt. No. 157-10]. The purpose of the Memorandum of Lease Termination was to correct the public record to reflect that AMEI no longer had a leasehold interest in the Leased Premises that it had pledged to its and Murray's lenders [Id.]. Defendants refused to execute the Memorandum of Lease Termination [Dkt. No. 157 at 11].

Based on the record presented, the Court **FINDS** that no question of material fact exists as to whether AMEI breached the Lease by improperly recording liens against the Leased Premises without Plaintiffs' consent. The language of the Lease is unambiguous. That the breach may have been inadvertent or that the liens created have now been released makes no difference for the purposes of liability.

AMEI and Murray likewise concede that AMEI did not obtain a Section 401 Certification or Section 404 Permit by September 14, 2016 as required under the plain language of the Lease [Dkt. Nos. 143-9 at 15-16; 143-7 at 2; 143-1 at 22]. The Lease required that lessee make applications for all "permits, licenses and/or approvals required by any governmental authority to mine, process and market coal on and from the Leased Premises and to construct and maintain all improvements required for such

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

mining, processing and marketing" by September 14, 2013 [Dkt. Nos. 143-1 at 22; 143-7 at 2]. The Lease language also stated that lessee "will have received all Permits" on or before September 14, 2016 [Id.]. AMEI's obligation on this point is not ambiguous or in dispute. Accordingly, the Court **FINDS** that Defendants breached the Lease by failing to secure a Section 401 Certification and Section 404 Permit by September 14, 2016, as intended and agreed to by the parties.

If the Lease is terminated for any reason other than the exhaustion of all the coal, its language is clear that AMEI, as lessee, shall promptly deliver to lessor or its designee "all surveys, maps, reports, drilling logs, core samples, coal analyses, and every other piece of information, document or instrument, regardless of the form it is in, related in any way to this Lease" and/or lessee's activities and operations under the Lease or on the Leased Premises [Dkt. No. 143-1 at 31-32]. Here, after the termination of the Lease, Plaintiffs requested from Defendants all information consistent with this section, which was described by one of Defendants' corporate representatives as a "survivorship provision" that required the sharing of information after the fact [Dkt. No. 143-3 at 93-95]. The information was not delivered in a prompt manner as intended by the parties, and became the subject of multiple discovery

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                    **Civil Case No. 1:17cv205**

---

disputes during this litigation, long after the Lease was terminated on October 4, 2016.[5] Given this current record, the Court **FINDS** that AMEI breached the Lease with respect to its duty to promptly provide plaintiffs with surveys, maps, reports, drilling logs, and other documents as required after termination of the Lease.

As to Plaintiffs' breach of contract claim, the Court **FINDS** that the parties had a valid Lease and that its language is unambiguous on AMEI's obligations to 1) pay a minimum royalty by a date certain; 2) obtain necessary mining and environmental permits, licenses, and certifications by a date certain; 3) abstain from wrongfully pledging and encumbering the Leased

---

[5] The same corporate representative, Jason Witt, testified that Defendants started gathering the information requested by Plaintiffs, which was required to be promptly provided under the Lease, but that he was not certain the information gathered was delivered [Dkt. No. 143-3 at 95]. He also stated that if the information was readily available and in a format easily transferrable, he would have expected it to be transferred after the Lease terminated and before litigation [Id. at 94-95]. The Lease terminated on or about October 4, 2016, and the complaint in this matter was filed on December 1, 2017 [Dkt. Nos. 143-11; 1]. The Court's Docket reflects that, while the parties have engaged in discovery in this litigation, multiple disputes as to the completeness of written discovery responses, proper verification of written discovery, and scope of Fed. R. Civ. P. 30(b)(6) designations have occurred, particularly on Defendants' behalf. Ultimately, Motions to Compel were pursued by Plaintiffs [Dkt. Nos. 42; 52], and the parties agreed to resolve the disputes by agreed order [Dkt. No. 59]. The disputes over the designation of Fed. R. Civ. P. 30(b)(6) witnesses [Dkt. Nos. 126; 131], were likewise resolved by an agreed order which denied Plaintiffs' motion for sanctions but granted Plaintiffs' request for fees and costs [Dkt. No. 134]. The parties then had a dispute over the bill of costs that was submitted by Plaintiffs pursuant to the agreed order [Dkt. Nos. 148; 153; 154; and 155], which was resolved by order on January 1, 2019 [Dkt. No. 161]. Some of these protracted discovery disputes involved information subject to the "survivorship provision" of the Lease. Therefore, the record is replete with examples of Defendants' failure to comply with their obligation under the Lease to promptly deliver to Plaintiffs all records and documents related to the Lease, lessee's activities and operations, or the Leased Premises.

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

Premises; and 4) promptly deliver to Plaintiffs surveys, maps, reports, drilling logs, and other documents after termination. The Court further **FINDS** that there is no evidence that Plaintiffs failed to perform their obligations under the Lease, while Defendant AMEI violated its duties as discussed above. Therefore, the Court **GRANTS in part** Plaintiffs' motion for summary judgment [Dkt. No. 142] as to liability on these grounds for the breach of contract claim.

## B. Specific Performance

In Count Two of the complaint, Plaintiffs assert that, in addition to the grounds for breach of contract discussed above, AMEI and Murray breached the Lease by failing to cooperate in the transfer and assignment of permits, licenses, other documents, and surface rights [Dkt. No. 1 at 18-20]. The Lease expressly states that if it is terminated or cancelled for any reason, AMEI agrees "to cooperate in the timely transfer and/or assignment of any and all permits, licenses, etc. required for mining or operation to Lessors or to its designated assignee upon Lessor's request therefore, to the extent the same are assignable or transferrable" [Dkt. No. 143-1 at 31]. Plaintiffs seek to compel specific performance of the Lease by requiring Defendants to "transfer sufficient surface rights in duration and scope to allow for the mining of all mineable coal and the

24

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

transfer of existing permits, licenses, and applications to Plaintiffs or their designee" [Dkt. Nos. 1 at 19-20].

After Plaintiffs notified AMEI and Murray that they were terminating the Lease for Defendants' failure to cure the default, AMEI acknowledged the Lease termination but declined to cooperate in the transfer of mining permits [Dkt. No. 143-17]. Jason Witt, on behalf of AMEI, stated by letter that a transfer of the mining permits would not be possible because Plaintiffs did not hold the necessary property rights to the leasehold estate [Id.]. Witt further advised that the corresponding WV/NPDES permits "would also be non-transferrable under the circumstances" [Id.]. Plaintiffs requested a "term sheet containing the fair sale price of the surface rights, as well as, alternatively, terms for a lease of the surface rights, or the form of another proposed legal document" by which Plaintiffs may obtain the legal right to enter the surface and conduct mining operations [Dkt. No. 143-16]. It is not clear from the record that a meaningful formal response was made to Plaintiffs' request.[6]

---

[6] AMEI states that it offered to convey or transfer all of its surface rights to Plaintiffs "in exchange for exactly what AMEI paid for those surface rights" but that the offer was not accepted [Dkt. No. 158 at 16 n. 17]. As set forth in the Court's Order of June 18, 2018, "West Virginia law 'implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract'" [Dkt. No. 38 at 17 (citations omitted)]. With that in mind, the Court notes that Defendants' "offer" ignores the term "assignment" as it is used in the cooperation

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                    **Civil Case No. 1:17cv205**

To effectuate a mining permit transfer, Plaintiffs asked that an AMEI corporate representative sign a transfer application for Mining Permit U-2004-10 (the "AMEI Mining Permit") for its submission to WVDEP [Dkt. No. 157 at 19]. AMEI agreed to sign the permit transfer application if it included a statement that provides in part: "AMEI has disputed any obligation to transfer ownership of, or leasehold interests in, the surface properties to the Lessors, and has stated that it will object to certain aspects of the proposed operations under these mining permits that AMEI believes exceeds the Lessors lawful rights to use the surface in connection with their mineral ownership" [Dkt. No. 145-15 at 16].

On September 28, 2018, Plaintiffs submitted the AMEI Mining Permit transfer application on behalf of its designee, Ozias Energy, LLC ("Ozias Energy") [Dkt. No. 145-14 at 24-25]. Immediately thereafter, on October 1, 2018, AMEI filed a formal letter of protest to object to the permit transfer application [Dkt. No. 145-19]. AMEI contends that West Virginia Code § 22-3-9(a)(9) requires an applicant to support its permit transfer

---

provision of the Lease. Assignment agreements for surface rights and surface use agreements are not uncommon instruments for parties to utilize when access to and the production of mineral rights are in question. A refusal to negotiate anything other than an outright transfer of ownership seems contrary to the Lease language that requires AMEI's cooperation such that the lessor may continue with mining operations on the Leased Premises when the Lease is terminated or cancelled.

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                      **Civil Case No. 1:17cv205**

---

request with a description of the legal documents upon which the

applicant's legal right to enter and conduct surface-mining

operations on the proposed permit area is based and whether that

right is subject of pending court litigation [Id.]. The letter

of protest also references the settled principle of West

Virginia common law that a mineral owner has the right to enter

the overlying surface only to the extent that it is "fairly

necessary" or "reasonably necessary" to extract the mineral

[Id.].

AMEI objected to the transfer application by claiming that

Plaintiffs' proposed construction and use of a preparation

plant, rail loadout, and other surface facilities associated

with the proposed operations are not "reasonably necessary" to

extract the coal in the permitted underground mining area [Dkt.

No. 145-19].[7] The protest letter explains that the West Virginia

Surface Coal Mining and Reclamation Act prevents the transfer of

a mining permit "unless the applicant affirmatively demonstrates

that the application is in compliance with all requirements of

that statute and the rules issued under it" [Id.]. Because an

applicant is required to identify the legal documents upon which

its right to enter and conduct the proposed surface mining

---

[7] As explained supra, AMEI developed and proposed this very plan in support of its application for the appropriate permits necessary to commence mining operations consistent with the Lease.

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                          **Civil Case No. 1:17cv205**

operations is based, and Plaintiffs "failed to identify any legal instrument that grants it the right to construct the facilities authorized by this mining permit," AMEI argued that "the Secretary should deny this permit transfer, for failing to satisfy the minimum requirements for approval" [Id.].

Plaintiffs maintain that because AMEI chose to develop a mine plan and seek mining permits for that plan that require the permit holder to own certain surface rights, AMEI must transfer or assign those rights to comply with the Lease obligation to cooperate in the transfer of permits and permit applications [Dkt. No. 143 at 25-26]. They argue that AMEI and Murray are sophisticated parties within the coal industry, and knew or should have known that to effectuate the express language of the Lease, Plaintiffs would need to be granted rights to the surface of the Leased Premises to receive the "timely transfer and/or assignment of any and all permits, licenses, etc. required for mining or operation" [Id. at 27]. If the language is interpreted as argued by Defendants, the cooperation provision would be illusory and superfluous, and render the purpose of the Lease meaningless because it would prevent Plaintiff lessors from actively pursuing coal mining operations on the Leased Premises after termination or cancellation of the Lease [Id.].

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

Defendants assert that AMEI has "done everything possible to fulfill its duty under" the Lease to "'cooperate' in the transfer of permits 'to the extent the same are assignable or transferrable'" [Dkt. No. 158 at 9]. Defendants also argue that "the AMEI mining permit is not 'transferrable' to a party . . . that lacks sufficient surface rights,"[8] and that, under the Lease, AMEI is "only required to cooperate in the transfer of permits that are "'transferrable'" [Dkt. No. 145 at 22]. AMEI and Murray deny that they have affirmatively impeded the transfer of permits and permit transfer applications, as alleged by Plaintiffs, and maintain that even if the permits are not transferred, Plaintiffs will have incurred no damages [Id.

---

[8] Defendants have made conflicting statements about whether the mining permit can transfer to Plaintiffs. In a letter to Plaintiffs after termination of the Lease, AMEI representative Jason Witt advised that the permits are non-transferrable under West Virginia law because Plaintiffs have no ownership rights in the surface of the leasehold estate [Dkt. No. 145-17]. In his Fed. R. Civ. P. 30(b)(6) deposition, Witt testified that the permits in question can be transferred but "you still have that issue of who owns the surface and who controls it and what rights will be – I mean what compensation would be paid for those rights if another party owns them" [Dkt. No. 143-3 at 104-05]. To effectuate a transfer, AMEI's corporate officer signed a permit transfer application which was returned to Plaintiffs for submission to the WVDEP on September 28, 2018 [Dkt. No. 145-14 at 24-25]. Immediately after, on October 1, 2018, AMEI's counsel in this matter, Christopher Power, filed a formal letter of protest objecting to the permit transfer, and affirming AMEI's position that the permit should not transfer because the designee cannot meet the minimum requirements for transfer – namely a right to access and use the surface [Dkt. No. 145-19]. Nevertheless, on March 22, 2019, Defendants sought a continuance of the bench trial in this matter because AMEI anticipates the WVDEP's decision granting the mining permit transfer application which would, according to Defendants' motion, render moot Plaintiffs' claim for breach from Defendants' failure to cooperate [Dkt. No. 170]. Based on the evidence presented to date, the Court concludes that the mining permits at issue are transferrable under West Virginia law, and an administrative process exists with the relevant state regulatory agencies to effectuate those transfers.

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                              **Civil Case No. 1:17cv205**

at 9-10]. At the pre-trial hearing on April 5, 2019, counsel for Defendants argued AMEI's right to protest the permit transfers to Plaintiffs and insisted that "[t]here's no obligation to cooperate if the Permit Transfer Application – if the permit is not transferable. There is nothing in that lease language that prevents AMEI from challenging whether or not the permit is transferable" [Dkt. No. 193 at 25].

Plaintiffs assert that Defendants' "selective reading" of the phrase "to the extent the same are assignable and transferrable" is contrary to the remainder of the Lease provisions and its purpose, as well as West Virginia's principles of contract interpretation [Dkt. No. 157 at 21]. They contend that Defendants' failure to cooperate in the transfer of existing permits has prevented them from mitigating the losses incurred because of AMEI and Murray's material breaches, and further prevented them from re-leasing and developing the mineral reserves that are the subject of the Lease [Dkt. No. 143 at 8].

On the record as it is currently developed, the Court **FINDS** that the Lease language governing the scope of Defendants' duty to cooperate in the transfer of permits and permit applications is ambiguous. The parties certainly contemplated the transfer and/or assignment of "any and all permits, licenses, etc." that

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

are "required for mining or operation to Lessors or to its designated assignee upon Lessors' request therefore" [Dkt. No. 143-1 at 31]. As determined by the Court in its June 16, 2018 Order, the inclusion of "etc." following "permits, licenses" is reasonably susceptible to an interpretation that would include permit transfer applications if they are required for mining or operation on the Leased Premises [Dkt. No. 38 at 20-21]. Defendants insist that no Lease provision, statute, regulation or tenet of common law requires them to transfer the entirety of their surface rights to Plaintiffs. While this may be true, the cooperation provision in the Lease also references an "assignment," and the record is not clear on whether the parties have discussed something short of a full conveyance of surface property rights by Defendants.[9]

There also exists an issue of material fact as to whether the parties intended the qualifying phrase "to the extent the same are assignable and transferrable" to be as restrictive as

_____

[9] Plaintiffs asked Defendants for a term sheet for the potential transfer and/or assignment of the surface rights, but it does not appear that terms of a transaction were meaningfully discussed. Defendants interpret Plaintiffs' specific performance/failure to cooperate claim as a request for the judicial condemnation of private property [Dkt. No. 158 at 16]. AMEI maintains that it offered an outright conveyance or transfer of the surface rights to Plaintiffs "in exchange for exactly what AMEI paid for those surface rights" but that it was not accepted [Id. at 16 n. 17]. The Court notes that this "offer" appears to ignore the "assignment" language in the cooperation provision of the Lease, which seems contrary to its purpose of requiring cooperation such that the lessor, on request to the lessee, may continue with mining operations on the Leased Premises if the Lease with Defendants is terminated or cancelled.

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                              **Civil Case No. 1:17cv205**

---

maintained by Defendants.  If so, it seems the parties would have intended for Plaintiff lessors to be prevented from mining the Leased Premises in perpetuity, so long as Defendants owned the surface rights and refused to negotiate a transfer or assignment of the same.  On its face, this interpretation seems to contradict the express Lease language which states that the parties do not intend to create a perpetual lease nor to convey a free-hold estate of any kind [Dkt. No. 143-1 at 21].  However, the Court needs to hear additional evidence on this issue. Accordingly, the Court **DENIES in part** Plaintiffs' motion for summary judgment [Dkt. No. 142] on whether AMEI and Murray breached the Lease language that requires the timely transfer or assignment of "permits, licenses, etc." that are required for mining or operation, and whether Plaintiffs may be entitled to specific performance.

**C. Guaranty Claim**

On the record presented, there is no question that Murray agreed to guarantee AMEI's performance under the Lease when it was executed on September 12, 2008 [Dkt. No. 143-6 at 5]. Defendants also concede that Murray "absolutely and unconditionally guaranteed the full and complete performance and payment by AMEI under the Lease and Assignment" [Dkt. No. 143-4 at 5].  They further admit that Murray did not pay the advance

32

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                          **Civil Case No. 1:17cv205**

royalty payment that AMEI failed to pay Plaintiffs by September 14, 2016 [Id. at 6]. Defendants assert that Murray received a May 31, 2017 letter from Plaintiffs' counsel which identified "a number of different alleged breaches of the Lease by AMEI," and "merely included" a statement that the letter "'shall also serve as a demand on Murray Energy Corporation pursuant to its guaranty obligations in paragraph 9 of the Assignment and Assumption Agreement'" [Dkt. Nos. 145 at 9; 157-28]. Because Plaintiffs previously invoked the guaranty obligation in a more specific manner after AMEI failed to pay the minimum royalty in 2009, Defendants argue that the May 31, 2017 "demand" letter was insufficient to put Murray on notice of the breach of the Lease and the action to be taken to fulfill the guaranty obligation [Id.].

Plaintiffs counter Defendants' argument with reference to Plaintiffs' demand letter, which specifically called for: Murray and/or AMEI to pay the amounts due for the Advanced Recoupable Production Royalty; the complete transfer of the permits and licenses on the Leased premises; the release of all liens and public filings to the Leased Premises; and a mutually-agreed written termination and/or settlement agreement [Dkt. Nos. 157 at 31; 157-28]. Defendants' corporate representative, Jason Witt, also testified there was no basis for Murray to

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                              **Civil Case No. 1:17cv205**

---

assert that it was not obligated for the payments and liability owed by AMEI to Plaintiffs [Dkt. No. 157-6 at 56]. Regardless, Murray has not made any payment owed by AMEI, or acknowledged its obligations to guaranty the performance of AMEI under the Lease [Dkt. No. 29 at 6].

The Court **FINDS** that no genuine issue of material fact exists as to whether Murray breached the guaranty agreement for AMEI's failure to pay Plaintiffs the September 14, 2016 minimum royalty. However, the Court further **FINDS** that the record is in dispute on the scope and extent of Murray's guaranty obligation because the record as to damages attributable to AMEI for breach of contract has not been established such that judgment as a matter of law is appropriate. For these reasons, the Court **DENIES in part** Plaintiffs' motion for summary judgment [Dkt. No. 142] on liability as to Murray's guaranty obligation beyond the minimum royalty AMEI failed to pay Plaintiffs by September 14, 2016.

**D. Damages**

Regarding damages for the breach of contract claims alleged in the complaint, Plaintiffs seek advance or minimum royalty payments, lost production royalties and permitting expenses, and a declaration that the previous advance royalty payments made by AMEI are forfeited [Dkt. No. 1 at 17-18]. They also seek

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                              **Civil Case No. 1:17cv205**

specific performance from AMEI and Murray, including the transfer of permits, licenses, pending permit applications, and necessary surface rights to allow Plaintiffs to mine the Leased Premises [Id. at 19-20]. Pursuant to the guaranty obligation, Plaintiffs ask that Murray be held fully liable for AMEI's breaches and liabilities [Id. at 21].

Plaintiffs seek the benefit of their bargain, or remedies that will put them in the same position as if AMEI and Murray performed their Lease obligations. See Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc., No. 2:09-cv-01278, 2011 WL 3022239, at *12 (S.D.W. Va. July 22, 2011). Plaintiffs specifically request the following damages: minimum royalty payments from 2016 through 2031; lost production royalties; costs to obtain permits not yet transferred to Plaintiffs or obtained by AMEI, including the Section 401 Certification and Section 404 Permit, and costs necessary to satisfy environmental mitigation requirements; an order that compels Defendants to transfer and/or assign necessary surface rights, mining permits, and permit applications; and attorneys' fees and costs resulting from Defendants' willful and intentional breach of the Lease, and incurred to obtain compliance by AMEI of its turnover obligations under the Lease [Dkt. No. 143 at 19-30].

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

Defendants argue that compensatory damages in breach of contract actions are to be strictly confined [Dkt. No. 145 at 15-16], and that the damages alleged by Plaintiffs are excessive and speculative. Defendants challenge the availability of future advance royalties where a lease is terminated, and dispute that a significant environmental mitigation payment is a "cost" necessary to obtain a mine permit [Dkt. No. 158 at 3-6]. Defendants further dispute Plaintiffs' contention that AMEI made a willful, "conscious decision" to abandon the Lease, and that they failed to fully cooperate in the transfer of all mining permits and licenses, or in obtaining a Section 404 permit [Id. at 7-11]. Likewise, Defendants maintain that the Lease does not require the transfer or assignment of surface property owned by AMEI, and that an order of specific performance on this issue would amount to a judicial condemnation of private property [Id. at 16-17]. Defendants assert that any damages alleged by Plaintiffs arose from Plaintiffs' termination of the Lease and not from any alleged breach by AMEI at the time of the termination [Id. at 19].

As described herein, this matter involves a coal production lease and royalties owed to Plaintiff lessors. The Supreme Court of Appeals of West Virginia has defined a mining royalty as "a payment to the owner of minerals in place for the

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                    **Civil Case No. 1:17cv205**

___

privilege of removing and appropriating the same, and is ordinarily based on upon the quantity of material produced." Bethlehem Steel Corp. v. Shonk Land Co., 288 S.E.2d 139, 150 (W. Va. 1982) (quoting Koppers Coal Co. v. Alderson, 26 S.E.2d 226 (W. Va. 1943)). West Virginia courts have routinely enforced contractual royalty provisions in the context of the coal industry. Anderson v. Nichols, 359 S.E.2d 117, 120 (W. Va. 1987) (affirming award of summary judgment for arbitrator's award of royalty payment under coal lease); Babcocke Coal & Coke Co. v. Brackens Creek Coal Land Co., 37 S.E.2d 519, 524 (W. Va. 1946) (enforcing royalty provisions of contract and declining to rescind the same despite difficulties in performance); Flavelle v. Red Jacket Consol. Coal & Coke Co., 96 S.E. 600, 605 (W. Va. 1918) (writing that "if a lessee covenants to . . . pay a definite rental or royalty, in the event he fails to do so and he is not exonerated therefrom by some other stipulation of the contract, he will generally be held to a strict performance of the covenant"); Lawson, et ux. v. Williamson Coal & Coke Co., 57 S.E. 258, 260-261 (W. Va. 1907) (enforcing royalty provision despite defendant's failure to commence mining).

The Fourth Circuit has adopted a similar approach. In Orlandi v. Goodell, 760 F.2d 78, 82 (4th Cir. 1985), the Fourth Circuit found that a royalty payment was enforceable under the

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

"clear terms of the contract" negotiated by the parties, despite the defendant's claim of mutual mistake. <u>Orlandi</u>, 760 F.2d at 82. In reaching this conclusion, the Fourth Circuit relied on <u>Babcocke Coal</u>, where the West Virginia Supreme Court of Appeals stated that "it is frequent occurrence in the business world that a party to a contract finds that its performance is onerous and unprofitable; nevertheless, good faith and fair dealing call for performance." <u>Id.</u> (quoting <u>Babcocke</u>, 37 S.E.2d at 522).

In West Virginia, "[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." <u>Kanawha-Gauley Coal & Coke Co.</u>, 2011 WL 3022239, at *12 (citing Restatement (Second) of Contracts § 347 (cmt. a) (1981)). Thus, West Virginia recognizes that a party injured by the breach of a contractual obligation may recover compensatory damages "as may fairly and reasonably be considered as arising naturally – that is, according to the usual course of things – from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    **Civil Case No. 1:17cv205**

result of its breach." <u>Kentucky Fried Chicken of Morgantown,</u>
<u>Inc. v. Sellaro</u>, 214 S.E.2d 823, 827 (1975).

West Virginia courts look to the language of the contract
to ascertain whether damages are direct and whether
consequential damages were foreseeable by the parties. <u>See</u>
<u>Desco Corp. v. Harry W. Trushel Const. Co.</u>, 413 S.E.2d 85
(1991); <u>see also Bethlehem Steel Corp.</u>, 288 S.E.2d 139, 149
(1982). Moreover, the Fourth Circuit has held that absent a
specific contractual provision barring claims for future
damages, such prospective damages are recoverable by a plaintiff
in a contract action. <u>Meineke Car Care Centers, Inc. v. RLB</u>
<u>Holdings, LLC</u>, 423 F. App'x 274, 280 (4th Cir. 2011) (reversing
lower court and holding that prospective royalties are a proper
measure of post-termination damages in a breach of contract
case).

The Court has before it extensive briefing, voluminous
exhibits, and reports from the parties' respective industry
experts [Dkt. Nos. 143-19; 143-25]. As one may expect, the
expert witnesses do not agree on the value of Plaintiffs' breach
of contract claims or the damages to which Plaintiffs may be
entitled. Plaintiffs' expert witness, John C. Bullock,
estimates Plaintiffs' damages at between $21,968,272.36 and
$55,797,141.36 [Dkt. No. 143-19 at 18]. Defendants' expert

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                          **Civil Case No. 1:17cv205**

witness, Stephen G. Capelli, opines that Plaintiffs terminated the coal lease which ended AMEI's obligation to pay any minimum royalty after the termination date [Dkt. 143-25 at 10]. Capelli also disputes that Plaintiffs are entitled to the value of lost coal production if Defendants do not transfer the surface rights above the Leased Premises, and he characterizes any such claim as too speculative and based on inappropriately estimated reserves [Id. at 10-11]. Capelli also disagrees with the mineability of Plaintiffs' reserves [Id. at 12].

The Court **FINDS** that a genuine issue of material fact exists as to the type, scope, and amount of damages Plaintiffs may be entitled to as a result of the breach of contract, whether the breach was decided as a matter of law, on pending cross-motions for summary judgment, or as may be established by a preponderance of the evidence during the bench trial. For the reasons stated, the Court **DENIES in part** Plaintiffs' motion for summary judgment [Dkt. No. 142] on the issue of damages that may have resulted from Defendants' breach of the Lease. Additionally, and for all the reasons set forth herein, the Court **DENIES** the entirety of Defendants' motion for summary judgment [Dkt. No. 144].

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                          **Civil Case No. 1:17cv205**

---

## V.   CONCLUSION

The Court **GRANTS in part** and **DENIES in part** the Plaintiffs'
motion for summary judgment [Dkt. No. 142]. Plaintiffs are
entitled to judgment as a matter of law on liability for the
following breach of contract claims against AMEI:

- failing to pay the advance recoupable production royalty
  since September 14, 2016;

- wrongfully pledging and encumbering the Leased Premises;

- failing to provide surveys, maps, reports, drilling logs,
  and other documents as required after termination of the
  Lease; and

- failing to obtain a Section 401 certification and Section
  404 permit by a date certain as required in the Lease.

There remains a genuine issue of material fact as to Plaintiffs'
claim that AMEI breached the Lease by failing to cooperate in
the transfer and assignment of permits, licenses, other
documents, and surface rights. There also remains an issue as
to whether Plaintiffs are entitled to specific performance of
certain Lease obligations. Also, while Plaintiffs have
established that Murray failed to honor its contractual guaranty
obligation upon demand for AMEI's nonpayment of the minimum
royalty on September 14, 2016, the scope and extent of the
guaranty obligation remains at issue for the parties to address

**Wickland, et al. v.**
**American Mountaineer Energy,**
**Inc., et al.**                                    Civil Case No. 1:17cv205

during the bench trial. Finally, there exists material questions of fact as to Plaintiffs' damages, and judgment of law cannot be granted.

The Court **DENIES** Defendants' motion for summary judgment [Dkt. No. 144].

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

Dated: April 12, 2019.

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE